UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIK MERCADO-ARECHIGA,<br><br>                                    Petitioner,<br><br>v.<br><br>CHRISTOPHER LAROSE; DANIEL A. BRIGHTMAN; TODD LYONS; KRISTI NOEM; PAMELA BONDI; ICE; and DEPARTMENT OF HOMELAND SECURITY DHS,<br><br>                                    Respondents. | Case No.: 26-cv-683-JES-DEB<br><br>**ORDER DENYING WITHOUT PREJUDICE PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[ECF No. 1]** |

Before the Court is Petitioner Erik Mercado-Arechiga's ("Petitioner") Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. Pursuant to the Court's order to show cause, Respondents filed a return to the petition and Petitioner filed a traverse. ECF Nos. 6, 7. After due consideration and for the reasons stated below, the Court **DENIES WITHOUT PREJUDICE** the petition.

## I.     BACKGROUND

Petitioner is a native of Mexico who last entered the United States on January 4, 2020 at the San Ysidro Port of Entry in order to seek asylum. ECF No. 1 at 1. He was

detained at that time and has now been held in immigration custody for six years. Below is a summary chronology of Petitioner's immigration and detention history.[1]

After Petitioner arrived at the border on January 4, 2020, he was detained under 8 U.S.C. § 1225(b) and subsequently placed into removal proceedings. ECF No. 1-3, Ex. A. When Petitioner was initially apprehended, he was detained at Otay Mesa Detention Center. ECF No. 1-3, Ex. B.

On December 17, 2020, an Immigration Judge ("IJ") denied Petitioner's applications for relief and ordered him removed. ECF No. 1 ¶ 2. On January 12, 2021, Petitioner appealed this decision to the Board of Immigration Appeals ("BIA"), and on May 28, 2021, the BIA dismissed the appeal.[2] ECF No. 1-3, Ex. C. Petitioner then appealed the BIA decision to the Ninth Circuit, and on March 3, 2023, the Ninth Circuit held that the IJ and BIA abused their discretion and remanded the case.[3] *Arechiga v. Garland*, No. 21-243, 2023 WL 2344228, at *1 (9th Cir. Mar. 3, 2023). On July 17, 2024, the BIA then remanded the case back to the IJ for further fact finding. ECF No. 1-3, Ex. D.

During the early years of his detention, records show that Petitioner did make some requests for bond hearings. A first bond hearing was held on February 19, 2021, but it was denied upon the IJ finding that it did not have jurisdiction to grant bond because Petitioner was mandatorily detained under 8 U.S.C. § 1225. ECF No. 6-1, Ex. 6. On November 18, 2021, a second bond hearing was held where the IJ again denied the request based on a finding of lack of jurisdiction. *Id.*, Ex. 9. The record also includes a document dated

---

[1] Neither party submits a comprehensive history of Petitioner's immigration and detention history so the description provided here represents what the Court was able to gather from all parties' submissions.

[2] The IJ found that Petitioner's conviction of First Degree Burglary under California Penal Code § 459 constituted a "particularly serious crime," which in turn made him ineligible to qualify for asylum and withholding of removal. ECF No. 1-3, Ex. C. The BIA reviewed this finding and found no error, thus dismissing his appeal. *Id.*

[3] The Ninth Circuit found that the IJ and BIA abused their discretion in finding that Petitioner's First Degree Burglary offense was a "particularly serious crime" because they limited the evidence considered to the information filed in the criminal case and ignored Petitioner's undisputed testimony that the house he burglarized was unoccupied. *Arechiga v. Garland*, No. 21-243, 2023 WL 2344228, at *1 (9th Cir. Mar. 3, 2023).

26-cv-683-JES-DEB

November 29, 2022, stating that Petitioner was considered for humanitarian parole or parole for public benefit reasons but that was also denied. *Id.*, Ex. 15.

Petitioner filed a first Petition for Writ of Habeas pursuant to 28 U.S.C. § 2241 shortly after the Ninth Circuit appeal of his removal proceedings. At that time, he was detained in Nevada,[4] and thus, this petition was heard by a district court in Nevada. That court granted Petitioner a bond hearing, finding that his detention at the time (43 months) had become unconstitutionally prolonged in absence of a bond hearing. *Arechiga v. Archambeault*, No. 223CV00600CDSVCF, 2023 WL 5207589, at *1 (D. Nev. Aug. 11, 2023). That court applied the framework set forth under *Banda v. McAleenan*, 385 F. Supp. 3d 1099 (W.D. Wash. 2019) and concluded that Petitioner at that time "is languishing in a detention center with 'no end in sight,' and the Due Process Clause entitles him to a prompt bond hearing, despite his lacking U.S. citizenship." *Id.* at *4. The court ordered a bond hearing to be held where the government was to bear the burden of establishing by clear and convincing evidence that Petitioner is a flight risk or a danger to the community. *Id.* at *1.

Thus, pursuant to that petition and order, on September 11, 2023, Petitioner was provided a bond hearing in front of an IJ but he was denied bond because he was found to be a "danger to the community" and "flight risk." ECF No. 1-3, Ex. G. In the memorandum opinion, the IJ summarized evidence based on Petitioner's past criminal charges and convictions, drug use, family support, and his efforts at rehabilitation.[5] ECF No. 6-1, Ex. 12. Petitioner appealed this bond order to the BIA, which affirmed it on January 8, 2024. *Id.*, Ex. 7.

---

[4] Petitioner states that he has been transferred a total of 12 times during the length of his detention: Otay Mesa, CA; San Luis, AZ; Otay Mesa, CA; Imperial, CA; Otay Mesa, CA; Pahrump, NV; Reno, NV; Pahrump, NV; Core Civic Pahrump, NV; Otay Mesa, CA; Florence, AZ; McFarland, CA; Otay Mesa, CA. ECF No. 1 at 1.

[5] The IJ also noted that evidence was presented at the hearing regarding a warrant issued for Petitioner by the Mexican government for homicide but affirmatively stated that this was not considered in the determination regarding bond. ECF No. 6-1, Ex. 12.

In parallel with this immigration activity, Petitioner also sought to vacate his state criminal conviction for First Degree Burglary. ECF No. 1 ¶ 31. On September 23, 2023, the state court vacated his convictions under California Penal Code § 1473.7.[6] *Id.*; *see* ECF No. 1-3, Ex. K. On May 23, 2024, Petitioner's criminal charges were fully dismissed against him. *Id.*; *see also* ECF No. 1-3, Ex. J.

In the meantime, Petitioner's immigration case proceeded. On October 23, 2024, Petitioner was set for a hearing in this removal proceeding in front of the IJ on February 18, 2025 in San Diego.[7] *Id.*, Ex. F. Petitioner alleges that this hearing never took place because it was vacated by the Court on motion from him because he and his counsel were never able to adequately communicate and prepare for the hearing. ECF No. 1 ¶ 32. Specifically, Petitioner alleges that from October 2024 to February 2025, he was only able to speak with counsel for 25 minutes on an unsecured phone line, despite many requests by counsel to communicate. *Id.* The continued hearing was set for April 10, 2025. *Id.* ¶ 23. Petitioner alleges that this was again reset because of issues with communication with his counsel. *Id.*

On May 6, 2025, Petitioner received another bond hearing, but he alleges that it was held without his attendance because the government failed to present him. ECF No. 1 ¶ 10. At that hearing, Petitioner alleged that the IJ denied bond, finding erroneously that he was a gang member and he was unable to present any argument to oppose this since he was not present. ECF No. 1 ¶ 10. Respondents included in their submission a copy of the IJ's denial. ECF No. 6-1, Ex. 13. The order stated that the new bond hearing was held based on the granting of a motion for reconsideration of the prior bond order by Petitioner due to a

---

[6] The state court vacated the convictions finding that Petitioner's guilty plea was invalid based on a prejudicial error regarding his ability to fully and meaningfully understand the adverse immigration consequences of the plea. ECF No. 1-3, Ex. K.

[7] On September 18, 2024, Petitioner was transferred to the Florence Correctional Center in Arizona. ECF No. 1-3, Ex. B. On that same day, the government filed a motion to change venue in Petitioner's removal proceedings to the Florence immigration court. ECF No. 1-3, Ex. E. The IJ declined to change venue since it was a remanded case so his case remained in the San Diego immigration court. *Id.*

change in circumstances arising from the vacatur of his burglary conviction. *Id.* The IJ concluded that even without considering this conviction, Petitioner still posed a danger and flight risk due to his other criminal history and gang affiliations. *Id.* The IJ also mentioned Petitioner's father's medical cancer diagnosis. *Id.* Petitioner also appealed this decision to the BIA, and it was again affirmed. *Id.*, Ex. 14.

The next Immigration Court hearing date was July 29, 2025, but Petitioner alleges that the government failed to produce him at this hearing. *Id.* ¶ 34. Thus, the IJ only addressed some evidentiary issues and reset the matter for October 23, 2025. *Id.* At that October 2025 hearing, it lasted only two hours and was continued to November 21, 2025. *Id.* ¶ 35. That November 21, 2025, hearing never happened due to a medical issue with the government attorney, and the hearing was vacated. His immigration hearing was next set for January 13, 2026, but he alleges that the government failed to produce him for the hearing again. *Id.* ¶ 38. Petitioner's next hearing is set for March 12, 2026. *Id.* Petitioner alleges that this next hearing will not be his last however, because more evidence needs to be presented. *Id.*

Petitioner again requested a new bond hearing based on his father's declining health, but the request was denied on January 22, 2026. ECF No. 1 ¶ 11. The IJ denied the request citing that Petitioner has had many custody redeterminations hearings and that since his last bond hearing in 2025, Petitioner did not present any change in circumstances that would impact his dangerousness or risk of flight. ECF No. 6-1, Ex. 14. On January 26, 2026, before he filed the instant petition, Petitioner was transferred back to Otay Mesa Detention Center. ECF No. 1-3, Ex. B.

Based on these facts, Petitioner raises two claims for violation of procedural and substantive due process. ECF No. 1 ¶¶ 44-52. He seeks release from custody, under reasonable conditions of supervision. *Id.* at 17.

## II.    LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).

"The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

### III. DISCUSSION

In Respondents' return to the petition, they raise the following arguments: (1) Petitioner is lawfully detained under § 1225 and his detention is mandated under this provision; and (2) Respondents have afforded Petitioner due process. ECF No. 6. The Court will address each of these issues in turn.

### A. Detention Under § 1225

The Court agrees with Respondents that Petitioner was detained at the border and has not been granted any form of parole, so Respondents have the authority to detain him under § 1225(b). However, the Court disagrees that no due process violation can therefore arise, as Respondents claim. ECF No. 6 at 4-5. Respondents essentially argue that § 1225(b) provides no limitation on the length of detention and that the statute provides all the due process that the petitioner is owed. *Id.* This position has been called into question by the Ninth Circuit:

> We have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so. Arbitrary civil detention is not a feature of our American government. "[L]iberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Civil detention violates due process outside of

6

"certain special and narrow nonpunitive circumstances." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (internal quotation marks and citation omitted).

*Rodriguez v. Marin*, 909 F.3d 252, 256-57 (9th Cir. 2018) (alteration in original). Indeed, numerous district courts have found that prolonged mandatory detention at some point will raise due process considerations. *See Maksin v. Warden, Golden State Annex*, No. 1:25-CV-00955-SKO (HC), 2025 WL 2879328, at *3 (E.D. Cal. Oct. 9, 2025) ("Several courts including the Third, Sixth, and Ninth Circuit, as well as numerous district courts, have found that unreasonably long detention periods may violate the due process clause.") (collecting cases)); *Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 1:25-CV-00098-SAB-HC, 2025 WL 2099343, at *6 (E.D. Cal. July 25, 2025) ("[E]ssentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process.") (internal citation omitted); *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772 (S.D. Cal. 2020) ("[T]he Court joins the majority of courts across the country in concluding that an unreasonably prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process.").

Thus, the Court rejects the proposition put forth by Respondents that prolonged detention under § 1225(b) can never raise Due Process concerns.

### B.     Procedural Due Process

As to Petitioner's first claim asserting violation of procedural due process, the Court must first address what test applies. "Neither the Ninth Circuit nor the Supreme Court have provided guidance regarding the point at which an immigration detainee's prolonged mandatory detention becomes unconstitutional." *Amado v. United States Dep't of Just.*, No. 25CV2687-LL(DDL), 2025 WL 3079052, at *5 (S.D. Cal. Nov. 4, 2025). This Court has previously applied the framework in *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019). *See, e.g., Sandesh v. LaRose*, No. 26-CV-0846-JES-DDL, 2026 WL 622690 (S.D. Cal. Mar. 5, 2026); *Prabhpreet v. LaRose*, No. 26-CV-393-JES-SBC, 2026

WL 310192, at *1 (S.D. Cal. Feb. 5, 2026); *Safinejad v. LaRose*, No. 26-CV-531-JES-AHG, 2026 WL 280217, at *1 (S.D. Cal. Feb. 3, 2026).

However, those cases differed from this one in that the petitioners there never had a bond hearing. In *Banda*, the government urged that court to use the analysis enunciated in *Mathews v. Eldridge*, 424 U.S. 319 (1976). 385 F. Supp. 3d. at 1118. The court rejected that approach in favor of its multi-factored test, distinguishing cases where a petitioner has already had a bond hearing: "While the *Mathews* factors may be well-suited to determining whether due process requires a second bond hearing, they are not particularly probative of whether prolonged mandatory detention has become unreasonable in a particular case." *Id.* at 1118. This was because, the court reasoned, *Mathews* "resolve[s] the question of 'whether the administrative procedures provided . . . are constitutionally sufficient," and "balances the benefits or burdens of 'additional or substitute procedural safeguards.'" *Id.* at 1106.

Indeed, many district courts in the Ninth Circuit have recognized this distinction and applied instead the *Mathews* test when addressing due process where a petitioner has already been afforded at a least one bond hearing. *See, e.g.*, *Sahota v. Allen*, No. 20-CV-03180-WHO, 2020 WL 2992872, at *6 (N.D. Cal. June 4, 2020) (using *Mathews* framework to determine whether bond hearing was appropriate where petitioner's last bond hearing was two years prior); *Rubin v. United States Immigr. & Customs Enf't Field Off. Dir.*, No. 2:24-CV-00260-TL-TLF, 2024 WL 3431914, at *6 (W.D. Wash. June 28, 2024) ("Because petitioner has already received a bond hearing (at which the Government had the burden), the Court should apply the *Mathews* test in this case."); *Singh v. United States Immigr. & Customs Enf't*, No. 2:22-CV-00548-BHS-TLF, 2023 WL 4627819, at *7 (W.D. Wash. Mar. 17, 2023) ("In this District, courts have applied the multi-factor *Banda* test where (unlike this case) a petitioner has not had a prior bond hearing. But where a petitioner has already had a hearing, courts in this District have applied the *Mathews* test to determine whether an additional bond hearing is required."); *Espinoza v. Wofford*, No. 1:24-CV-01118-SAB-HC, 2025 WL 1556590, at *12 (E.D. Cal. June 2, 2025) ("Here, as Petitioner

has already received a bond hearing and is seeking a second bond hearing, the Court finds that the three-part test set forth in [*Mathews*] is applicable."); O*rtuno-Perez v. ICE Field Off. Dir.*, No. 2:23-CV-344-BHS-DWC, 2023 WL 5807305, at \*4–5 (W.D. Wash. Aug. 1, 2023) ("Where a petitioner has already had a bond hearing, courts in this District have applied the test set forth in [*Mathews*] to determine whether an additional bond hearing is required.").

Thus, in this circumstance where Petitioner has had at least two bond hearings on the merits, the Court will apply the *Mathews* framework to determine whether he is entitled to any further process. Under *Mathews*, the Court must consider three factors: "(1) the private interest at stake; (2) the risk of an erroneous deprivation of the private interest at stake through the procedures used, and the probable value, if any, of additional procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that any additional procedural requirements would entail. 424 U.S. at 335.

### 1. Private Interest

As to the first factor, it is indisputable that "the private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" *Hernandez v. Sessions*, 872 F.3d 976, 933 (9th Cir. 2017); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects."); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1207 (9th Cir. 2022) ("We have also held, more generally, that an individual's private interest in 'freedom from prolonged detention' is 'unquestionably substantial.'"). While courts have considered the relative strength of this interest at different stages of the removal process, they have generally rejected the government's efforts to meaningfully distinguish between the liberty interests of detainees at various stages and detention under different provisions of the INA. *See Rubin*, 2024 WL 3431914, at \*7. However, the Ninth Circuit has cautioned that courts should not "overstate the strength of [Petitioner]'s showing under the

first *Mathews* factor." *Rodriguez Diaz*, 53 F.4th at 1207. "[W]e cannot simply count his months of detention and leave it at that. We must also consider the process he received during this time, the further process that was available to him, and the fact that his detention was prolonged due to his decision to challenge his removal order." *Id.*

Here, Petitioner's six-year detention is unquestionably prolonged. It is true that Petitioner has had two substantive bond hearings, providing him with some process during that time, and has chosen to appeal various adverse rulings. However, given this significant length of detention, the Court still concludes that this factor is in favor of Petitioner.

### 2. Government's Interest

As to the <u>third</u> factor, it is similarly indisputable that the government has strong interests in enforcing the INA's statutory framework for detention of "noncitizens whom Congress has deemed pose a flight risk or danger to the community based on their offenses." *Rubin*, 2024 WL 3431914 at \*7. It also has a strong interest in the "[e]nforcement of [the] immigration laws," particularly paying attention to the sovereign interests at stake in the immigration context. *Rodriguez Diaz*, 53 F.4th at 1208.

However, courts have distinguished the strength of this interest depending on whether the noncitizen seeks release or another bond hearing. Governmental interests in enforcing immigration laws in general may be substantial, but in the context of whether to provide Petitioner with another bond hearing or not, this interest may be diminished if another bond hearing is sought because "courts generally have found that the cost of providing a bond hearing is relatively minimal" and usually, providing another bond hearing would not be "fiscally or administratively burdensome." *Eliazar G.C. v. Wofford*, No. 1:24-CV-01032-EPG-HC, 2025 WL 711190, at \*8 (E.D. Cal. Mar. 5, 2025).

Here, Petitioner primarily requests release, which would implicate the highest governmental interests. Even if the Court considers the alternative remedy of another bond hearing, this factor would still weigh in favor of Respondents.

//

//

26-cv-683-JES-DEB

### 3. Risk of Erroneous Deprivation and Value of Additional Safeguards

The second *Mathews* factor bears the most discussion for Petitioner. "In evaluating the risk of erroneous deprivation in the context of noncitizen detention, the Ninth Circuit has looked to whether the detainee has a statutory right to procedural protections, such as individualized custody determinations and the right to seek additional bond hearings throughout detention." *Jensen v. Garland*, No. 5:21-cv-01195-CAS (AFM), 2023 WL 3246522, at *6 (C.D. Cal. May 3, 2023) (citing *Rodriguez Diaz*, 53 F.4th at 1209-10). Generally, where a noncitizen has been afforded some process, "the risk of an erroneous deprivation of his liberty interest and the value of additional procedures is very low unless he can demonstrate a material change in circumstances since his last bond hearing." *Rubin*, 2024 WL 3431914, at *8.

As recounted in the background section, Petitioner has been afforded two substantive bond hearings. First, ordered as a result of his first 2241 petition, Petitioner received a bond hearing on September 11, 2023, where the IJ denied bond upon a finding of danger to community and risk of flight. The opinion recounted the evidence considered. The order was subsequently appealed to the BIA where it was affirmed. Second, after the vacatur of Petitioner's First Degree Burglary conviction, he sought and was granted another bond hearing on May 6, 2025. The IJ again denied bond on the same conclusion, finding that even without the burglary conviction, there was sufficient other evidence of criminal history. This bond order was again appealed and affirmed by the BIA. Most recently, on January 22, 2026, Petitioner requested another bond hearing due to his father's declining health. The IJ denied that request based on the proximity of Petitioner's last bond hearing and finding that his father's health concerns would not affect his danger to the community or risk of flight considerations.

Here, even though Petitioner's detention has been lengthy, he has been afforded the protection of process during this time. *See, e.g.*, *Espinoza*, 2025 WL 1556590, at *12 (finding risk under this factor to be small where decision to detain the petitioner was subject to numerous layers of review); *Eliazar*, 2025 WL 711190, at *7 (same); *Ortuno-Perez v,*

2023 WL 5807305, at *6 (same). Further, Petitioner does not state any material changes that have not previously been considered. Both the vacatur of his burglary conviction and the declining health of his father have been considered by IJs. *Compare Rubin*, 2024 WL 3431914 (no material change where petitioner "already had an opportunity to make these arguments and present the evidence of his positive activities—to the IJ at his previous bond hearing") *and Espinoza*, 2025 WL 15556590, at *13 (finding minimal risk where petitioner had opportunity to argue additional evidence already with aid of counsel) *with Eliazar*, 2025 WL 711190, at *7 (finding factor to weigh in favor of petitioner where thirty-two months had passed since previous bond hearing and the case presented "new developments" because petitioner had completed many rehabilitative programs). Finally, Petitioner's last substantive bond hearing in front of an IJ occurred less than a year ago, and his motion for reconsideration of that order was just considered last month. *Cf. Eliazar*, 2025 WL 711190, at *7 (factor weighing for petitioner where last bond hearing was almost three years ago). Thus, the Court concludes that this factor weighs against Petitioner in light of the process he has received under the unique facts of his case.

In conclusion, weighing the *Mathews* factors overall, the Court concludes that due process does not require ordering another bond hearing for Petitioner at this time, nor does it require his immediate release.

### C. Substantive Due Process

Petitioner also raises a substantive due process claim, claiming that the liberty interest at stake can only be deprived when the confinement serves a legitimate purpose and is reasonably related to that purpose. ECF No. 1 ¶¶ 50-51. To support this argument, Petitioner cites to *Zadvydas* for its civil detention framework to argue that the government may only deprive a non-citizen of physical liberty when confinement serves a legitimate purpose and is reasonably related to, and not excessive in relation to that purpose. *Id.* ¶ 51.

The Court does not disagree that a substantive due process issue may arise with prolonged decision. *See Rodriguez v. Marin*, 909 F.3d 252, 256-57 (9th Cir. 2018) ("We have grave doubts that any statute that allows for arbitrary prolonged detention without any

26-cv-683-JES-DEB

process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so."). However, the Court does not find that Petitioner has met his burden here. First, *Zadvydas* arose under detention governed by 8 U.S.C. § 1231, after a final order of removal had been issued, and Petitioner does not articulate why that framework applies here. That does not end the inquiry, but Petitioner does not cite any other authority under which a substantive due process violation was found under similar factual circumstances. As outlined above, Petitioner has been provided bond hearings within the last year where his arguments as to his criminal history and personal circumstances have been considered.

Thus, the Court must **DENY** the substantive due process claim at this time. However, this denial is without prejudice to Petitioner, should his detention become further prolonged with adequate protections or if he can provide the Court any further authority under which a substantive due process violation has been found under similar circumstances.

### IV.   CONCLUSION

For the reasons discussed above, the Court **DENIES WITHOUT PREJUDICE** Petitioner's writ of habeas corpus. The Clerk of Court is **ORDERED** to **CLOSE** this case.

**IT IS SO ORDERED.**

Dated: April 6, 2026

Honorable James E. Simmons Jr.
United States District Judge

13

26-cv-683-JES-DEB